UNITED STATES

v.

**Dennis R. TOY, Sonar Technician (Submarine) First Class (E–6), U.S. Navy.**

NMCCA 200001418.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 4 April 2000.

Decided 29 July 2004.

LT Marcus Fulton, JAGC, USN, Appellate Defense Counsel.

LT Colin A. Kisor, JAGC, USNR, Appellate Defense Counsel.

LT C.C. Burris, JAGC, USNR, Appellate Government Counsel.

LT Frank L. Gatto, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, SUSZAN and HARRIS, Appellate Military Judges.

HARRIS, Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, the appellant was convicted of one specification of forcible sodomy with a child between 12 and 16 years old, one specification of sodomy with a child between 12 and 16 years old, and five specifications of committing indecent acts with another (three specifications with a child

under the age of 16 years), all with the same step-daughter-victim. The appellant's crimes violated Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934. The appellant was sentenced to confinement for 20 years, reduction to pay grade E–1, total forfeiture of pay and allowances, and a dishonorable discharge. The convening authority approved the adjudged sentence and, in an act of clemency, suspended the adjudged forfeitures for 20 years and waived automatic forfeitures for 6 months.

We have carefully considering the record of trial, the appellant's three assignments of error, the Government's response, and the appellant's reply, in accordance with Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). First, the appellant asserts that the military judge erred when he found that his prosecution for Specification 1 of Charge II (forcible sodomy of a child between 12 and 16 years of age) and Specification 1 of Charge III (indecent acts with a child between 12 and 16 years of age) were not barred by the statute of limitations. Second, the appellant asserts that the military judge erred by failing to suppress both an audiotape and a videotape pursuant to Military Rule of Evidence 317, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). Third, the appellant asserts that the military judge erred by permitting the members to consider the offense of indecent acts with another as a lesser included offense of rape, where the acts in question consisted solely of non-forcible consensual sexual intercourse between two persons of age to consent. We find merit in the appellant's first assignment of error. We conclude that the statute of limitations has expired as to Specification 1 of Charge II and Specification 1 of Charge III. We shall take corrective action in our decretal paragraph.

Finally, during the course of this court's completion of review of this case, the appellant petitioned this court for extraordinary relief in the nature of a writ of mandamus seeking release from confinement pending appellate review. We immediately address below the appellant's petition for extraordinary relief.

## Extraordinary Relief

The appellant asserts that the respondent officer exercising general court-martial authority (OEGCMA) jurisdiction over him abused his discretion by failing to act on the appellant's 29 March 2004 request for release from adjudged confinement pending completion of appellate review. The appellant avers that: (1) he has waited four years for appellate review; (2) the Government has conceded that his most serious convictions must be set aside; and, (3) at a minimum, this court must reassess his sentence. The appellant requests that this court issue a writ of mandamus ordering the OEGCMA to defer the unexecuted portion of the appellant's confinement until completion of appellate review in his case. We decline to grant relief.

This court has jurisdiction to determine whether it has jurisdiction to entertain a petition for extraordinary relief. See RULE FOR COURTS-MARTIAL 201(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.). Further, this court has jurisdiction over the petitioner's case pursuant to Article 66, UCMJ. Moreover, this court also has authority under the "All Writs Act" to issue all writs necessary or appropriate "in aid of" its "respective" statutory jurisdiction. 28 U.S.C. § 1651(a); Clinton v. Goldsmith, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); see Dettinger v. United States, 7 M.J. 216, 218–19 (C.M.A.1979); see also Ponder v. Stone, 54 M.J. 613, 615 (N.M.Ct.Crim.App. 2000), writ-appeal pet. denied, 54 M.J. 380 (C.A.A.F.2000); Aviz v. Carver, 36 M.J. 1026, 1028 (N.M.C.M.R.1993).

 The issuance of a writ is "a drastic remedy that should be used only in truly extraordinary situations." Aviz, 36 M.J. at 1028. The petitioner bears a heavy burden to show "he is clearly and indisputably entitled to the relief as a matter of right." Ross v. United States, 43 M.J. 770, 771 (N.M.Ct. Crim.App.1995). Further, this court has authority under the All Writs Act to "enter an order deferring service of confinement pending completion of appellate review." Moore v. Akins, 30 M.J. 249, 253 (C.M.A.1990).

 In deciding whether a petition for extraordinary relief for delay in an appeal

that purportedly violates due process warrants the extraordinary remedy of release from custody, this court must further determine whether the delay so tainted the appellate process as to "affect the constitutional integrity of the appeal itself." *Cody v. Henderson*, 936 F.2d 715, 722 (2d Cir.1991)(citing *Simmons v. Reynolds*, 898 F.2d 865, 869 (2d Cir.1990)). In *Diaz v. The Judge Advocate General of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F.2003), the Court of Appeals for the Armed Forces instructed this court to exercise its supervisory powers under Article 66, UCMJ, to ensure timely and fair appellate review of courts-martial. Further, our superior court held that "an accused has a right to a timely review of his or her findings and sentence." *Id.* at 37; *see also United States v. Williams*, 55 M.J. 302, 305 (C.A.A.F.2001), *cert. denied*, 534 U.S. 1169, 122 S.Ct. 1189, 152 L.Ed.2d 129 (2002).

Finally, in determining whether extraordinary relief should be granted, consideration is given to those factors that are designed to protect the post-trial phase: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, as his or her defenses in case of reversal and retrial, might be impaired." *United States v. Smith*, 94 F.3d 204, 207 (6th Cir.1996)(quoting *Harris v. Champion*, 15 F.3d 1538, 1559 (10th Cir.1994)), *cert. denied*, 519 U.S. 1133, 117 S.Ct. 997, 136 L.Ed.2d 877 (1997).

■ To prevent servicemembers from serving more confinement than is ultimately approved by the convening authority, Congress invested in the convening authority the discretion to defer execution of a sentence pending his or her action. *See* Art. 57a, UCMJ, 10 U.S.C. § 857a. A military court reviews a convening authority's decision to deny a request for deferment for abuse of discretion. *Akins*, 30 M.J. at 253. As such, we conclude that Congress invested in the convening authority the discretion to defer execution of a sentence pending his or her action only *when it is in the best interests* of the individual and the service to do so.

The appellant asserts that the OEGCMA abused his discretion in failing to act on his request for deferment of confinement pending completion of appellate review. Petition for Extraordinary Relief of 19 May 2004 at 4. The appellant opines that, pursuant to Article 1156 of the U.S. Navy Regulations, he has the right to have his request acted upon "promptly" and without delay. *Id.* Article 1156 states:

> Requests from persons in the naval service shall be acted upon promptly. When addressed to higher authority, requests shall be forwarded without delay. The reason should be stated when a request is not approved or recommended.

U.S. Navy Regulations (1990). Further, the appellant opines that if the OEGCMA does not release him pending the completion of appellate review, he will suffer harm not correctable during the regular course of appeal. Petition for Extraordinary Relief of 19 May 2004 at 4–5. Moreover, the appellant opines that with the two most serious specifications—which include the only forcible act and the only acts with a prepubescent girl—removed from the sentencing picture, his sentence will quite likely include less confinement than that confinement he will have already served by the completion of his appellate review. *Id.* at 5. Finally, the appellant opines that since the normal appellate review process will not be able to compensate for his having served too much time in confinement, his is an appropriate case for this court to exercise its extraordinary writ authority. *Id.* We do not agree.

On 19 November 2002, the appellant filed his brief and assignments of error. On 25 June 2003, the Government filed its answer. On 29 September 2003, the appellant filed his reply to the Government's answer. At that time, this court was in a position to begin review of the appellant's record. However, despite the Government's concession of error under the appellant's first assignment of error—which would entitle him to relief—at no time did the appellant request expedited review by this court in the nature of a motion for appropriate relief pursuant to the Courts of Criminal Appeals Rules of Practice and Procedure, Rule 23. Nonetheless, we shall

treat the appellant's 19 May 2004 petition for extraordinary relief and his 2 June 2004 reply brief to the Respondent's 26 May 2004 answer, as a motion for appropriate relief in the nature of a request for expedited review of his case—which we now decide below.

Under Article 57a(a), UCMJ, it is clear that a convening authority has the discretionary authority to defer confinement that has not been ordered executed. It is also clear that the deferment terminates once the sentence is ordered executed by the convening authority. Art. 57a(a), UCMJ. The particular Secretary concerned may also defer further service of a sentence to confinement while review is pending by the CAAF pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2). What is not as clear from Article 57a(a), UCMJ, is whether the convening authority or OEGCMA, after the sentence is ordered executed in a particular case, has *any* discretionary authority to *defer* confinement on that case pending completion of appellate review by this court in accordance with Article 66(c), UCMJ, *unless* the specific conditions contained in Article 57a(b), UCMJ, are present. Those conditions, in part, state that "[i]n any case in which a court-martial sentences a person ... to confinement, the convening authority *may* defer the service of the sentence to confinement, without the consent of that person, *until* after the person has been permanently released to the armed forces by a state or foreign country ... [.]" Art. 57a(b)(1), UCMJ (emphasis added). We find that the particular conditions delineated under Article 57a(b), UCMJ, have not been met in the appellant's case. Nonetheless, since the action we take in our decretal paragraph effectively sets aside the convening authority's action, we need not now decide whether the OEGCMA had the authority to act on the appellant's post-action request for deferral and release from confinement since, under our below action, the convening authority may now exercise his or her discretionary authority on the appellant's deferral request pursuant to Article 57a(a), UCMJ, as the action approving the sentence is no longer in force.

■ We conclude that the appellant has not met his heavy burden of showing he is clearly and indisputably entitled to the requested relief as a matter of right, and decline to grant relief. *Ross*, 43 M.J. at 771. We also decline to exercise this court's extraordinary writ authority under the All Writs Act to enter an order deferring service to confinement pending completion of appellate review. *Akins*, 30 M.J. at 253.

## Statute of Limitations

■ In the appellant's first assignment of error, he asserts that the military judge erred when he found that his prosecution for Specification 1 of Charge II and Specification 1 of Charge III were not barred by the statute of limitations. The appellant avers that this court should dismiss Specification 1 of Charge II and Specification 1 of Charge III, and remand his case to the convening authority for a new sentencing proceeding. The Government concedes that the military judge erred in his ruling. We agree.

Article 43, UCMJ, 10 U.S.C. § 843, provides generally for a five-year statute of limitations for alleged violations of the UCMJ. At trial, the defense moved to have Specification 1 of Charge II and Specification 1 of Charge III dismissed pursuant to Article 43, UCMJ. Appellate Exhibit XXIV. The military judge correctly found that the statute of limitations was tolled on 20 December 1999, when sworn charges were received by the special court-martial convening authority. Record at 385. The military judge also correctly found that the alleged acts underlying Specification 1 of Charge II and Specification 1 of Charge III occurred more than five years prior to the tolling of the statute of limitations in the appellant's case. However, the military judge erroneously overruled the appellant's motion to dismiss. *Id.* at 386.

The military judge held that the usual statute of limitations found in Article 43, UCMJ, was modified by 18 U.S.C. § 3283 (1994), relying upon the reasoning used by the Air Force Court of Criminal Appeals in *United States v. McElhaney*, 50 M.J. 819 (A.F.Ct.Crim.App.1999). In *McElhaney*, the Air Force Court of Criminal Appeals held that 18 U.S.C. § 3283 superceded the usual statute of limitations where children are physically or sexually abused by a military

servicemember. *Id.* at 826. As the result of the military judge's finding that Article 43, UCMJ, was superceded by 18 U.S.C. § 3283, the appellant became amenable to prosecution for all of the subject offenses until MW attained twenty-five years of age.

This view of the operation of 18 U.S.C. § 3283 was specifically overruled by the Court of Appeals for the Armed Forces (CAAF). Our superior court held that 18 U.S.C. § 3283 has no effect on the rights granted servicemembers by Article 43, UCMJ. *United States v. McElhaney,* 54 M.J. 120 (C.A.A.F.2000). In overruling the Air Force Court of Criminal Appeals, the CAAF specifically invalidated the rationale of the military judge in the appellant's case, holding in *McElhaney* that "the [trial] court below erred when it applied the statute of limitations codified at 18 U.S.C. § 3283 to [the] appellant's court-martial. Article 43[,] [UCMJ,] provides the applicable statute of limitations. Accordingly, [the affected charges and specifications] shall be dismissed as outside the statute of limitations." *Id.* at 126.[1]

Accordingly, we shall take corrective action in our decretal paragraph. Due to the serious nature of the offenses that we dismiss, we decline to speculate as to what punishment the court-martial might have imposed in the absence of those offenses. Therefore, we will not reassess the sentence. *See United States v. Eversole,* 53 M.J. 132 (C.A.A.F.2000).

### Suppression of Evidence

█ In the appellant's second assignment of error, he asserts that the military judge erred by failing to suppress both an audiotape and a videotape pursuant to Mil. R. Evid. 317. The appellant avers that this court should set aside the findings and the sentence and return his case to the convening authority, who may either dismiss the charges or order a rehearing, as authorized by the court. We disagree.

During the appellant's trial, he filed a motion *in limine* to suppress Prosecution Ex-

hibits 1 and 2. Appellate Exhibit XX. In his motion, the appellant claims a violation of Mil. R. Evid 317(a). *Id.* at 2. Under Mil. R. Evid. 317(a),

> [w]ire or oral communications constitute evidence obtained as a result of an unlawful search or seizure within the meaning of Mil. R. Evid. 311 when such evidence must be excluded under the Fourth Amendment to the Constitution of the United States as applied to members of the armed forces *or if such evidence must be excluded under a statute applicable to members of the armed forces.*

(Emphasis added). The appellant opines that pursuant to Mil. R. Evid. 317(a), Prosecution Exhibits 1 and 2 should have been excluded "under a statute applicable to members of the armed forces," that being 18 U.S.C. § 2515 (1998). Appellant's Brief of 19 Nov 2002 at 7. Under 18 U.S.C. § 2515:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [18 U.S.C. §§ 2510 *et seq.*].

In part, 18 U.S.C. § 2511(1) (1998) prohibits the intentional interception and disclosure of wire, oral, or electronic communications, except as exempted elsewhere within the chapter. At trial, the Government looked to 18 U.S.C. § 2511(2)(d) for such an exemption. Appellate Exhibit XXI. 18 U.S.C. § 2511(2)(d) states:

> It shall *not be unlawful* under this chapter [18 U.S.C. §§ 2510 *et seq.*] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent

---

1. We note that the military judge did not have the benefit of the CAAF decision when he denied the motion to dismiss.

to such interception *unless* such communication is intercepted for the *purpose* of committing any criminal or tortious act in violation of the Constitution or law of the United States or any State.

(Emphasis added).

The appellant argues that Prosecution Exhibits 1 and 2 fell outside the exemption provided by U.S.C. § 2511(2)(d), because LW's *purpose* in creating those recordings was, in fact, criminal. Appellant's Brief of 19 Nov 2002 at 8–10. The appellant opines that Hawaii law prohibits non-consensual interceptions of oral communications in private homes. *Id.* He is correct. Hawaii Revised Statutes § 803–42 (1998) provides, in part:

> Interception, access, and disclosure of wire, oral, or electronic communications, use of pen register, trap and trace device, and mobile tracking device prohibited[.]
>
> (a) Except as otherwise specifically provided in this part any person who:
>
> (1) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> (2) Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any wire, oral, or electronic communication;
>
> . . . .
>
> shall be guilty of a class C felony.
>
> . . . .
>
> (b)
>
> . . . .
>
> (3) It shall not be unlawful under this part for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State; provided that *installation in any private place, without consent of the person or persons entitled to privacy therein, of any device for recording, amplifying, or broad-*

> *casting sounds or events in that place, . . . is prohibited.*
>
> (4) It shall not be unlawful under this part for a person acting under color of law to intercept a wire, oral, or electronic communication, when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.
>
> . . . .

(Emphasis added). Nonetheless, at the appellant's trial, the military judge focused on LW's stated *purpose* in making the recordings, ruling that:

> The Court does not find that the defense has met its burden to demonstrate that [LW acted with] the *purpose* of at least committing a crime when the videotape and when the audiotape were made.
>
> The Court also finds that the defense has not met its burden to demonstrate that [LW] acted with a criminal or tortious *purpose* in preparing the videotape[,] which is likewise the subject of defense's motion for suppression.

Record at 390 (emphasis added). The military judge subsequently denied the appellant's motion to suppress both tapes. *Id.*

On appeal, the appellant correctly recites the language of 18 U.S.C. § 2511(2)(d), but fails to adequately address the extensive precedent throughout the federal legal system, which rejects his analysis. *See United States v. Morrison*, 153 F.3d 34, 57 (2d Cir.1998)(holding that, with regards to 18 U.S.C. § 2511(2)(d), evidence admissible under federal law cannot be excluded because it would be inadmissible under state law. This is because it is not unlawful under federal law for a person not acting under color of law to intercept a wire, oral or electronic communication where such person is a party to the communication); *United States v. Horton*, 601 F.2d 319, 323 (7th Cir.1979)(construing 18 U.S.C. § 2511(2)(d) to mean that a person not acting under color of law could lawfully record conversations to which he was a party, so long as the *purpose* of the recording was not to commit a crime; and, that a more restrictive state law would not affect the admissibility of such evidence in a federal

court), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Felton,* 592 F.Supp. 172, 193 (W.D.Pa.1984), *rev'd on other grounds,* 753 F.2d 256 (3d Cir.1985)(interpreting 18 U.S.C. § 2511(2)(d) to mean that if the taping by a person not acting under color of law was in violation of state law, that fact would not render the recordings inadmissible in a federal criminal trial; for as long as federal law is satisfied and federal standards of reasonableness are met, the evidence is admissible, despite the fact that the interception, *per se,* was a violation of state law).

It is clear that LW violated the State of Hawaii's criminal prohibitions on the installation in any *private place* of any device for recording, amplifying, or broadcasting sounds or events in that place, without the *consent* of the appellant, who was entitled to privacy therein. Further, LW did, in fact, *record* criminal *admissions* of the appellant in that private place. Nonetheless, for the appellant to prevail on his argument that the tapes should have been suppressed, he bore the burden by a preponderance of the evidence to show that LW acted with a criminal or tortious *purpose,* over and above having violated Hawaii Revised Statutes § 803–42 by installing a recording device in a private place without his consent. *See United States v. Zarnes,* 33 F.3d 1454, 1469 (7th Cir.1994). This task he clearly failed to accomplish. Accordingly, we decline to grant relief.

**Sexual Intercourse as an Indecent Act**

In the appellant's third assignment of error, he asserts that the military judge erred by permitting the members to consider the offense of indecent acts with another as a lesser included offense of rape, where the acts in question consisted solely of non-forcible consensual sexual intercourse between two persons of age to consent. The appellant avers that this court should set aside the findings of guilty to indecent acts with another under both Specifications 1 and 2 of Charge I, and remand his case to the convening authority for a new sentencing hearing. We disagree.

In November 1992, the appellant met his future wife, LW, in West Kingston, Rhode Island. At that time, LW had two daughters from an estranged marriage. LW's daughters, MW and HW, were ten years old and eight years old, respectively. In 1994, the appellant's relationship with LW blossomed into a more serious romantic relationship and, during August, he moved in with LW and her daughters. LW was the appellant's first girlfriend. And according to LW, the appellant was sexually naive.

When the appellant was in the process of moving in with LW and her daughters, LW discovered a letter written by her then twelve-year-old daughter, MW, which indicated that MW had a "crush" on the appellant. At that time, LW cautioned the appellant to avoid an inappropriate relationship with MW. The appellant and MW, nonetheless, began spending a great deal of time alone together, because LW was working long hours. According to MW, in September 1994, the appellant began a pattern of kissing her and fondling her breasts over her clothes, which led to his fondling her under her clothes. Also, sometime between September and December 1994, the appellant performed oral sodomy on MW. MW did not know what oral sodomy was, but participated because she had a "crush" on the appellant. When LW found another letter written by MW about the appellant, she confronted him about his relationship with MW. According to LW, the appellant admitted to LW that he had kissed twelve-year-old MW. The appellant did not acknowledge his other sexual misconduct.

In September 1995, the appellant and LW were married. The appellant and his new family transferred from shore duty on the East Coast to Pearl Harbor, Hawaii, where the appellant was stationed onboard the USS CHARLOTTE (SSN 766). The appellant spent most of 1996 at sea. In February 1997, the appellant's father became seriously ill and the appellant and his family went on emergency leave to Pittsburgh, Pennsylvania. According to MW, while alone in a hotel room in Pittsburgh with the appellant, he removed her shirt and kissed her. MW was fourteen years old at that time. According to to MW, in 1997, on both Mother's Day and ten days later on LW's birthday, when she was fifteen years old, she orally copulated

the appellant. LW, once again believing the appellant was becoming too close to MW, confronted the appellant. He admitted to performing oral sodomy on MW and having MW perform oral sodomy on him.

Because MW and HW visited their father as well as LW's family on the mainland during the summers, and due to the appellant's deployment schedule, the appellant and MW had very little contact between June 1997 and August 1998. However, according to MW, one morning in early November 1998, when she was sixteen years old, the appellant and MW had sexual intercourse before the appellant left for work, while LW was still sleeping. Then, according to MW, about a week and half later, she and the appellant again had sexual intercourse in the morning, before he went to work, while LW was taking a shower. Shortly thereafter, on a third morning, LW found the appellant naked in bed with MW, who was also naked and climbing off the top of the appellant. After LW exploded in anger and threatened to report the appellant's criminal misconduct, MW begged LW not to hurt the appellant by reporting him to the authorities. LW told the appellant that if he was going to remain in the house, he would have to be "locked up somewhere." Record at 655.

According to LW, she and the appellant reached an arrangement. Any time that the appellant was home, he was to be secured to the headboard of LW's four-poster bed with handcuffs. The appellant would only be released from his bondage when he left the house or when the family had company at the house. According to LW, this arrangement continued from November 1998 to September 1999. In April 1999, the appellant began to become less agreeable about handcuffing and confining himself in the bedroom and began to argue with LW. LW secretly audiotaped at least one of their arguments. Prosecution Exhibit 2. Further, when the appellant broke one of LW's fingers after she slapped him, LW, being in fear of future violence on the part of the appellant, videotaped the appellant in September 1999 while he was handcuffed to the headboard. Prosecution Exhibit 1. Only after the appellant's crimes were reported to military authorities and he

was ordered into pretrial confinement, was he finally released from his consensual bondage.

The appellant specifically argues that the facts and circumstances rendering the acts charged indecent are not fairly embraced by the elements of rape as they are pled in Charge I. Appellant's Brief of 19 Nov 2002 at 13. Therefore, the appellant concludes, "indecent acts with another [are] not a lesser-included offense of rape in this instance[.]" *Id.*

 "An accused may be found guilty of an offense necessarily included in the offense charged...." Article 79, UCMJ, 10 U.S.C. § 879. After the close of evidence during trial, an instruction on a lesser included offense is proper "when an element from the charged offense which distinguishes that offense from the lesser offense is in dispute." R.C.M. 920(e), Discussion. Where warranted by the evidence adduced at trial, the military judge has a duty to *sua sponte* instruct on lesser included offenses. *United States v. Jackson,* 12 M.J. 163, 166 (C.M.A.1981). An instruction on a lesser included offense may also be requested by either the prosecution or the defense. *United States v. Emmons,* 31 M.J. 108, 111 (C.M.A.1990). Where an accused opposes the giving of such an instruction, the military judge may still give the instruction when warranted by the evidence. *See United States v. Davis,* 50 M.J. 674, 681 (N.M.Ct.Crim.App.1999), *rev'd on other grounds,* 53 M.J. 202 (C.A.A.F.2000). Further, a military judge's decision on whether or not to give an instruction on a lesser included offense is reviewed *de novo.* *United States v. Smith,* 50 M.J. 451, 455 (C.A.A.F.1999).

 The appellant was charged with having raped his step-daughter, MW, on both 6 and 16 November 1998. Charge Sheet (Charge I, Specifications 1 and 2). The appellant was also charged with having committed indecent acts with MW based on those identical acts of sexual intercourse. *Id.* (Charge III, Specifications 4 and 5). In response to these specific charges, the appellant filed a motion pursuant to R.C.M. 907(b)(3)(B) to dismiss Specifications 4 and 5 of Charge III, as multiplicious with Specifica-

tion 1 and 2 of Charge I. Appellate Exhibit XXVI. The military judge explicitly relied on the case law cited by trial defense counsel to find Charge III, Specifications 4 and 5, to be lesser included offenses of Charge I, Specifications 1 and 2. Record at 384.

At the close of evidence on the merits, the trial defense counsel objected to the military judge giving a lesser included offense instruction on indecent acts. Appellant's Brief of 19 Nov 2002 at 11. However, the basis of that objection was not that the indecent acts specifications were not legitimate lesser included offenses of the rape specifications; but was, instead, that the government had failed to put on evidence to demonstrate that the appellant's sexual relationship with his step-daughter, MW, met the legal definition of "indecent." Record at 966–75. In overruling the appellant's objection, the military judge found, that as a matter of law, the fact finders could reasonably conclude that the appellant's acts were "indecent." *Id.* at 980–81.

We reject the appellant's turnabout and find that his actions at trial waived any claim that may have existed on the issue of whether indecent acts are lesser included offenses of rape in his case. *See Freytag v. Commissioner,* 501 U.S. 868, 895, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)(Scalia, J., concurring); *see also Weymouth,* 43 M.J. at 340. Further, based on the specific facts of the appellant's case, we conclude that, as a matter of law, sexual intercourse between this married step-parent and his step-child who had not yet attained the age of 18 years was indecent—thereby making their act of sexual intercourse an indecent act. *See United States v. Wheeler,* 40 M.J. 242, 247 (C.M.A. 1994)(Gierke, J., concurring in part, dissenting in part, and concurring in the result). Accordingly, we decline to grant relief.

### Conclusion

The findings of guilty of Specification 1 of Charge II and Specification 1 of Charge III are set aside. Those specifications are dismissed. We affirm the remaining findings. Concluding that we cannot properly reassess the sentence, the record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate convening au-

thority who may order a new sentencing hearing. If a rehearing on sentencing is impractical, the convening authority can approve a sentence of no punishment. Upon completion of the new post-trial action, the record will then be returned to this court for completion of appellate review.

Senior Judge PRICE and Judge SUSZAN concur.