# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2024-10**

————————————

**In re Myles L. PHIPPS**
Staff Sergeant (E-5), U.S. Air Force
*Petitioner*

————————————

Petition for Extraordinary Relief in the Nature of a Writ of Mandamus

Decided 29 October 2024

————————————

*Military Judge*: David M. Cisek.

*GCM convened at*: Eglin Air Force Base, Florida.

*For Petitioner*: Captain Mendel Taub, USAF.

*For Respondent*: Major Regina Henenlotter, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

Petitioner is currently the accused at a special court-martial facing one charge and one specification of wrongful use of a controlled substance in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] Trial is scheduled to begin on 2 December 2024.

———————

[1] Unless otherwise noted, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2023 ed.).

On 6 September 2024, during his court-martial proceeding, Petitioner filed a Motion to Dismiss for Lack of Personal Jurisdiction. On 13 September 2024, the Government opposed the motion. On 17 September 2024, an Article 39a, UCMJ, 10 U.S.C. § 839(a), session was held where additional evidence and argument were presented. On 19 September 2024, the military judge denied the motion to dismiss.

On 26 September 2024, Petitioner filed with this court a petition for extraordinary relief in the nature of a Writ of Mandamus and a Motion to Stay Proceedings. This court docketed the petition on 27 September 2024. On 30 September 2024, the Government opposed Petitioner's Motion to Stay Proceedings.

Petitioner requested that we "direct[ ] the Trial Court to immediately stay ongoing court-martial proceedings and dismiss the charge[ ] for lack of *in personam* jurisdiction." We declined to stay the proceedings on 1 October 2024. Having considered the petition, we find Petitioner is not entitled to the requested relief.

## I. BACKGROUND

The military judge set forth the following findings of fact in his determination on the Motion to Dismiss. We do not find them to be clearly erroneous.

> [Petitioner]'s initial date of current service is 4 April 2017. [Petitioner] has had no breaks in active duty service during this time.
>
> On 18 February 2024, [Petitioner] began the necessary steps to separate from the Air Force by facilitating the preparation of his final accounting of pay.
>
> On 6 March 2024, [Petitioner]'s Request and Authorization for Separation was approved. In Box 13, the form projected his expiration of term of service (ETS) as the separation date: "03 A[pril] 2024." Box 29 cited "[Department of Air Force Instruction (DAFI)] 36-3211"[2] as the authority for this separation.
>
> On 8 March 2024, [Petitioner]'s [Department of Defense Form (DD Form)] 214[3] Worksheet was completed.
>
> On 27 March 2024, during an involuntary urinalysis, [Petitioner] provided a urine sample at the Drug Demand Reduction

---

[2] Department of Air Force Form 36-3211, *Military Separations* (Jun. 2022).

[3] Department of Defense Form 214, *Certificate of Uniformed Service* (Feb. 2022).

Program (DDRP) at Eglin Air Force Base[, Florida]. The Air Force Drug Testing Laboratory (AFDTL), in turn, notified the DDRP that it allegedly detected cocaine in this sample.

On 1 April 2024, a Financial Operations Technician at the Comptroller Squadron completed [Petitioner]'s Final Separation Worksheet, calculating his final pay as $3,142.84. *This included [Petitioner] being paid for 3 April 2024.*

On 2 April 2024 at 0659, [Petitioner] received an email from the Total Force Service Center that stated, "You can download the Official DD Form 214 '24 hours' after your effective separation or retirement date . . . Your official DD Form 214 (Copies 1 and Member-4), Certificate of Release or Discharge from Active Duty, will be available for you to access electronically via vMPF in 24 hours (AFTER YOUR EFFECTIVE DATE OF SEPARATION or EFFECTIVE RETIREMENT DATE)."

The Air Force tracks all its required separation clearance processes through the digital platform known as "vMPF."

[Petitioner] was not required to attend a face-to-face final out-processing appointment.

By 2 April 2024, [Petitioner] had completed all tasks on the vMPF checklist

On the morning of 3 April 2024, at 0845 hours, [Petitioner] reported to [Technical Sergeant (TSgt) KR], [a member of] his [command support staff]. As [Petitioner] completed all necessary steps on his vMPF checklist, TSgt [KR] conducted his final records review satisfactorily, cleared him from the Air Force, and advised him that he was now discharged.

Later that morning, Mr. [MC], the local DDRP Manager, notified investigators at the [security forces squadron] via email [Petitioner] had tested positive for cocaine at a level of 352 [nanograms per milliliter].

At approximately 0947 hours, [s]ecurity [f]orces investigators began their investigation and notified [Petitioner] accordingly.

Soon after this notification was made on 3 April 2024, the [installation staff judge advocate] requested that [the Air Force Personnel Center (AFPC)] involuntarily extend [Petitioner] on active duty beyond his ETS date. Specifically, [the staff judge advocate] requested that [Petitioner]'s service on active duty be involuntarily extended "in anticipation of the preferring of

charge[ ].” [Master Sergeant (MSgt) RC] of the [force support squadron] also contacted AFPC, requesting that [Petitioner] be involuntarily extended pursuant to the request of [Petitioner]'s Commander.

At 1510 on 3 April 2024, AFPC placed an administrative hold on [Petitioner], involuntarily extending his service on active duty beyond his ETS date.

On 4 April 2024, [Petitioner] received an email from the Total Force Service Center stating that, “since your approved date of separation has been cancelled and you did not separate, your official DD-214 has been ‘VOIDED.’ It also has been pulled from your official service records in [the Automated Records Management System].”

[Petitioner]'s Common Access Card (CAC) was set to expire on 4 April 2024.

On 5 April 2024, an off-cycle deposit of $3,142.84 was made to [Petitioner]'s bank account.

On 17 June 2024, [Major KS] preferred one charge with one specification against [Petitioner], alleging a violation of Article 112a, UCMJ. The Special Court-Martial Convening Authority referred the case to trial on 24 June 2024.

(Emphasis added) (ellipses in original).

## II. LAW

“The All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction.” *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). “However, the Act does not enlarge our jurisdiction, and the writ must be in aid of our existing statutory jurisdiction.” *Id.* (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534–35, (1999)). “The courts of criminal appeals are courts of limited jurisdiction, defined entirely by statute.” *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) (citation omitted). Clearly, review of a court-martial's exercise of personal jurisdiction over a servicemember is within our existing statutory jurisdiction under Article 66, UCMJ, 10 U.S.C. § 866. *See*, *e.g.*, *Webb v. United States*, 67 M.J. 765, 767 (A.F. Ct. Crim. App. 2009) (considering an extraordinary writ petition challenging personal jurisdiction over an Airman beyond his expiration of term of service). Thus, we have jurisdiction to take up this writ.

The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943) (citations omitted). A writ of mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary cases.'" *EV v. United States*, 75 M.J. 331, 332 (C.A.A.F. 2016) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)).

In order to prevail on a petition for a writ of mandamus, a petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (per curiam) (citing *Cheney*, 542 U.S. at 380–81).

"A military judge's decision warranting reversal via a writ of mandamus 'must amount to more than even gross error; it must amount to a judicial usurpation of power . . . or be characteristic of an erroneous practice which is likely to recur.'" *In re KK*, 84 M.J. 664, 667 (A.F. Ct. Crim. App. 2023) (omission in original) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (per curiam)).

"Generally, there are three prerequisites that must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense, (2) jurisdiction over the accused, and (3) a properly convened and composed court-martial." *United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012) (citing Rule for Courts-Martial 201(b); *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006)). Jurisdiction over an accused is lost upon discharge from the service, but "the UCMJ does not state when a servicemember's discharge from the armed forces becomes effective for jurisdictional purposes." *United States v. Christensen*, 78 M.J. 1, 4 (C.A.A.F. 2018). "As a general matter, members of the armed forces do not have an unconditional right to be discharged upon" the expiration of their term of service, and "[t]he authority to retain servicemembers past their period of obligated service for purposes of trial by court-martial is a longstanding feature of military law." *Smith v. Vanderbush*, 47 M.J. 56, 57–58 (C.A.A.F. 1997); *see also* R.C.M. 202(c)(1) ("Court-martial jurisdiction attaches over a person when action with a view to trial of that person is taken.").

The United States Court of Appeals for the Armed Forces "has identified three criteria to consider when determining whether a servicemember's discharge has been finalized for jurisdictional purposes: (1) the delivery of a discharge certificate (a DD Form 214); (2) a 'final accounting of pay'; and (3) the completion of the 'clearing' process that is required under service regulations." *Christensen*, 78 M.J. at 4 (quoting *United States v. Hart*, 66 M.J. 273, 276–79 (C.A.A.F. 2008)). However, this guidance is not binding when it goes "against reason or policy." *Id.* (quoting *United States v. Nettles*, 74 M.J. 289, 291

(C.A.A.F. 2015)). "[I]f one or more of these criteria have not been fully met, then the military trial judge must consider the totality of the circumstances in making a jurisdictional determination." *Id.* at 5 n.6 (citing *Nettles*, 74 M.J. at 291).

### III. ANALYSIS

Petitioner argues that he was discharged from the Air Force on 3 April 2024, prior to the staff judge advocate's and his commander's requests to involuntarily extend him on active duty and expressions of intent to prefer charges against him. In order to prevail on this writ, Petitioner has the burden to show that he is entitled to his requested mandamus relief. In this particular case, he must show it is clear and indisputable that he is not subject to court-martial jurisdiction. He has failed to meet this high burden.

The Government did not dispute before the military judge that Petitioner received a final accounting of pay or completed a "clearing" process as required by appropriate service regulations to separate a member from military service. The parties disagree as to when a servicemember's DD Form 214 is final and becomes a valid discharge certificate. In evaluating this issue, the military judge cited *United States v. Williams*, 53 M.J. 316 (C.A.A.F. 2000), and held, "when a valid legal hold is placed on a member before the[ ] expiration of the date that constitutes the effective date of the discharge[,] then the discharge is properly rescinded, and the military retains *in personam* jurisdiction." We find no error in this conclusion. We consider two factual circumstances that support the military judge's finding of personal jurisdiction.

Petitioner had completed all his out-processing steps as of 0845 on 3 April 2024. However, his pay accounting included payment for 3 April 2024. In other words, he was paid for his service on active duty on 3 April 2024. This fact significantly undermines Petitioner's claim to clear and indisputable relief. It is a bold assertion indeed for a member to claim that he is not on active duty on a day he is in fact being paid for being on active duty.

Moreover, as the military judge correctly recognized,

> [Petitioner] was placed on a valid legal hold at 1510 on 3 April 2024, prior to the effective date of his discharge [4 April 2024 at 0001]. [Petitioner]'s DD Form 214 was not accessible until 24 hours after [Petitioner]'s effective separation or retirement date and [Petitioner] was not able to download it prior to being placed on administrative hold.

There was no delivery of the final DD Form 214 to Petitioner as he could not have accessed it prior to the placement of the legal hold that involuntarily extended him on active duty. The military judge held, "the Court finds no

termination of jurisdiction under these circumstances." We find no clear error in this holding. Petitioner has not overcome his high burden to show that relief is warranted.

For the foregoing reasons, Petitioner has not demonstrated that the right to issuance of the writ he seeks is clear and indisputable, and he has therefore failed to show the appropriateness of the relief he requests.

## IV. CONCLUSION

Accordingly, the Petition for Writ of Mandamus dated 26 September 2024 is **DENIED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court